UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDREA BLACKSHEAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-02218-JRO-TAB |
| | ) | |
| PERFORMANCING CONTRACTING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO COMPEL FORENSIC IMAGING OF MOBILE DEVICE**

## I. Introduction

Defendant Performance Contracting, Inc. filed a motion to compel Plaintiff Andrea Blackshear to produce her cell phone for forensic imaging to obtain text messages regarding her complaint allegations. [Filing No. 57.] Defendant contends that forensic imaging is necessary because Plaintiff's repeated failure to produce all responsive text conversations and her unreliable, confusing, and excessively redacted spreadsheet analysis of text messages suggests intentional concealment, or at least an inability to search and retrieve electronically stored information responsive to Defendant's discovery request. Plaintiff opposes the motion and argues that her past ESI production, including a spreadsheet analysis of text messages, is sufficient, and a forensic search of her phone would unduly infringe on her privacy. [Filing No. 62.]

Defendant's motion to compel forensic imaging [Filing No. 57] is granted to the extent discussed below. The Court finds that the parties' stipulated protective order [Filing No. 34] and an appropriate search protocol would adequately mitigate Plaintiff's privacy concerns. Even

assuming Plaintiff has made a good faith effort in discovery, Plaintiff's past deficient productions and improper redactions suggest that she lacks the expertise needed to identify responsive materials on her phone.

## II. Background

Plaintiff alleges that Defendant, her former employer, discriminated against and wrongfully terminated her based on her sex and race and in retaliation for engaging in protected activity. [Filing No. 37.] Defendant denies Plaintiff's allegations and argues that the company fired Plaintiff for sexual harassment. [Filing No. 16, at ECF p. 2-3.]

In January 2026, Defendant served discovery seeking disclosure and production of communications, including text messages, between Plaintiff and Plaintiff's co-workers at Defendant's company and other individuals with whom Plaintiff texted regarding her claims.[1] [Filing No. 58, at ECF p. 4-5.] Plaintiff's interrogatory responses disclosed 16 individuals with whom she exchanged text messages concerning her claims. [Id. at 3, 17.]

Defendant takes issue with Plaintiff's production of text conversations. According to Defendant, "Plaintiff initially produced 173 pages of random text messages which were so disorganized it was difficult to determine who Plaintiff was texting with and when." [Id. at 2.] Defendant alleges that the text messages from the initial production were "poorly screenshotted" and omitted date stamps and portions of relevant text conversations that would have provided context for the limited text messages produced. [Id. at 6.] Defendant followed up with Plaintiff to request supplemental discovery on more than one occasion. Having received no additional

[1] While the requests for production of documents seeking text messages did not contain temporal or substantive limitations, Defendant acknowledges that they should be limited to a three-year period and pertain to Plaintiff's claims, damages, and work for Defendant, as discussed at a June 15, 2026, discovery conference. [Filing No. 58, at ECF p. 4 n.2; Filing No. 64, at ECF p. 9.]

records, Defendant requested a S.D. Ind. Local Rule 37-1 discovery conference. However, just hours before the June 15, 2026, conference Plaintiff produced about 1,000 pages of documents—allowing Defendant insufficient time before the conference to review the supplemental production to determine what issues remained in dispute. The Court ordered the parties to confer on any remaining discovery disputes and authorized them to seek another conference or "file a motion seeking appropriate relief" if they were unable to resolve the dispute. [Filing No. 44.]

Further review of the June 15 supplemental production showed that it consisted of roughly 950 pages of text messages and contained dates showing that the text messages had been in Plaintiff's possession for several months. [Filing No. 58, at ECF p. 3, 7.] However, the supplementation failed to include text messages from all individuals that Plaintiff disclosed texting with regarding her allegations against Defendant. [Id. at 7.] On July 2, 2026, counsel for the parties met and conferred regarding ongoing discovery issues.

That day, Defendant also filed a motion seeking attorney's fees related to Plaintiff's alleged non-compliance with basic discovery obligations that led to the June 15 conference. [Filing No. 46.] The Court denied that motion. However, in doing so, the Court acknowledged that "Defendant's frustration with Plaintiff's lack of diligence in discovery is justified." [Filing No. 54, at ECF p. 1.] The Court noted that Plaintiff's argument in support of her untimely, piecemeal document productions "lack[ed] candor." [Id. at 2.] Furthermore, the Court agreed with Defendant that "the facts suggest that Plaintiff 'would have continued to ignore her discovery obligations until [Defendant] notified the Court to request assistance.'" [Id. (quoting Filing No. 51, at ECF p. 6).] In admonishing Plaintiff, the Court wrote, "This dilatory approach to discovery is unprofessional, causes unnecessary delays, and increases the litigation costs." [Id.]

Instead of producing additional responsive text conversations as required by the January 2026 discovery requests, Plaintiff emailed Defendant on July 3, 2026, and provided a spreadsheet itemizing text messages.[2] Metadata revealed the spreadsheet was originally created four months earlier and modified since the original extraction. [Filing No. 58, at ECF p. 8.] The accompanying email from Plaintiff's counsel indicated that the spreadsheet was only a "draft" and Plaintiff would provide an "official version" after counsel completed "final comparisons and reviews." [Id. at 8.] However, no final version ever came. The spreadsheet is unwieldy—containing 127 unlabeled columns and 148,973 rows of data, 80,576 of which have been replaced with the text "Non-Responsive – Per RFP Review." [Id. at 9.] Defendant found most of the unredacted data to be unresponsive to the discovery requests. [Id.]

Furthermore, Defendant argues that the spreadsheet is unreliable and inadmissible. Plaintiff disclosed only that she or her husband got the spreadsheet from an unknown member of Best Buy's Geek Squad. Plaintiff has neither provided insight into the protocol used for Best Buy's data extraction nor disclosed the search terms counsel used when redacting allegedly unresponsive data. [Id.] Moreover, Defendant questions the alleged origins of the spreadsheet. According to Defendant, a chatbot on Best Buy's website indicated that Best Buy does not offer forensic imaging or text message extraction services. [Filing No. 58-5.] While a rogue Best Buy employee could have performed a service not typically advertised or offered, there is simply no evidence of the unidentified employee's competency to perform this service or the manner used to extract data from Plaintiff's phone.

---

[2] Production of this spreadsheet was responsive to a second set of discovery requests served on June 12, 2026, that specifically requested the spreadsheet. However, compliance with this subsequent discovery request does not resolve all issues related to the original request for actual text communications, which has led Defendant to request a forensic search of Plaintiff's phone.

Additionally, Defendant has put forth examples of what it claims are improper redactions, including the following excerpt from the spreadsheet:

| | | | | |
|---|---|---|---|---|
| +17655134076 | 1.71E+12 | 1 | | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| +17655134076 | 1.71E+12 | 2 | | Yes, got me for sexual harassment. Totally bullshit. I'm fighting it |
| +17655134076 | 1.71E+12 | 1 | | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| +17655134076 | 1.71E+12 | 1 | | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| +17655134076 | 1.71E+12 | 2 | | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| +17655134076 | 1.71E+12 | 2 | | He totally should be fired |
| +17655134076 | 1.71E+12 | 1 | | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| +17655134076 | 1.71E+12 | 2 | | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| +17655134076 | 1.71E+12 | 1 | | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| +17655134076 | 1.71E+12 | 1 | | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |

[Filing No. 58, at ECF p. 10.] This excerpt contains two unredacted texts regarding Plaintiff's termination that are clearly relevant to Plaintiff's employment discrimination claims. Yet, the excerpt inexplicably contains redacted texts from the same conversation, which seemingly would be discoverable because, at a minimum, they would provide context as to why Plaintiff suddenly texted, "Yes, [they] got me for sexual harassment." The entire text conversation—as opposed to isolated texts—would be responsive to Defendant's discovery requests. Plaintiff has not explained her methodology for identifying responsive material within the spreadsheet.

Additionally, Defendant argues that the initial production of text messages, while incomplete, shows that the spreadsheet inappropriately redacts responsive text messages from the spreadsheet. For instance, Defendant compares a screenshot of a text conversation produced in the initial production to the portion of the spreadsheet pertaining to that conversation:




| | | | | |
|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| 0 | +17654310158 | 1.72E+12 | 2 | Guess who just got fired |
| 0 | +17654310158 | 1.72E+12 | 2 | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| 0 | +17654310158 | 1.72E+12 | 1 | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| 0 | +17654310158 | 1.72E+12 | 1 | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| 0 | +17654310158 | 1.72E+12 | 2 | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| 0 | +17654310158 | 1.72E+12 | 2 | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| 0 | +17654310158 | 1.72E+12 | 1 | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |
| 0 | +17654310158 | 1.72E+12 | 2 | [REDACTED - NON-RESPONSIVE PER RFP REVIEW] |

[Filing No. 64, at ECF p. 7.] The text conversation is between Plaintiff and another former employee of Defendant. Plaintiff redacted the portions of the conversation that would at least provide context to the sole unredacted text. She also redacted relevant texts discussing Plaintiff's alleged harasser (Andrew) and the claim itself. This suggests that Plaintiff's search terms failed to include even the name of Plaintiff's alleged harasser—what is, at best, a glaring oversight.

Defendant also states that Plaintiff testified to additional responsive text messages at her August 2026 deposition that had not been produced in discovery or included in the spreadsheet. [Filing No. 64, at ECF p. 8.] After again following up with Plaintiff's counsel, Plaintiff eventually supplemented her production with additional text messages concerning Plaintiff's claims. [Id. at 8-9.]

**III. Discussion**

The Court begins its discussion by noting Plaintiff filed a surreply without seeking leave from the Court to do so. [Filing No. 68.] Plaintiff's surreply indicates that it is "[p]ursuant to S.D. Ind. L.R. 7-1(d)." [Id. at ECF p. 1.] However, Local Rule 7-1(d), which pertains to the handling of routine or uncontested motions, says nothing about surreplies. Local Rule 56-1(d) permits a surreply by a party opposing summary judgment but "only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response." That rule does not apply to other motions practice. Local Rule 7-1(c)(3) permits response and reply briefs, and sets forth a timeline for these filings, but makes no mention of surreplies. Accordingly, surreply briefs in the context of the motion before the Court are not authorized without an order granting leave to file a surreply.

"The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief." *Meraz-Camacho v. United States*, 417 Fed. App'x 558, 559 (7th Cir. 2011). Plaintiff devotes much of the surreply to improperly addressing Defendant's objection that the spreadsheet is not admissible—an argument raised in Defendant's original brief [Filing No. 58, at ECF p. 2, 9, 14-16] and ignored in Plaintiff's response brief—and expanding on the response

brief's arguments regarding compliance with S.D. Ind. Local Rule 37-1 [Filing No. 62, at ECF p. 16-18]. For those reasons, Plaintiff's surreply [Filing No. 68] is stricken.

The Court now turns to the merits of the dispute. In the absence of an agreement or order stating otherwise, parties must produce ESI in the form "it is ordinarily maintained or in a reasonably useable form." Fed. R. Civ. P. 34(b)(2)(E)(ii). The producing party should not convert a file to another format solely for production or scrub or alter metadata. *See Outzen v. Kapsch Trafficcom USA, Inc.*, No 1:20-cv-01286-TWP-MJD, 2021 WL 3673786, at *6 (S.D. Ind. Aug. 19, 2021). In the present case, the Case Management Plan also addresses ESI production and requires the parties to produce ESI in the form of a searchable PDF or in native format. [Filing No. 16, at ECF p. 4-5.] Plaintiff's spreadsheet analysis of text messages is not the same as producing text messages as ordinarily maintained, as searchable PDFs, or in their native format. As to a forensic search of a device, the CMP only requires that, if such an examination is appropriate, it must be made "in a commercially reasonably manner." [Id.]

A forensic search of an electronic device is an "extraordinary remedy." *Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 WL 7049914, at *2 (N.D. Ill. Dec. 23, 2019). Such a search is appropriate "'[o]nly if the moving party can actually prove that the responding party has concealed information *or* lacks the expertise necessary to search and retrieve all relevant data.'" *Id.* (quoting *Mirbeau of Geneva Lake LLC v. City of Lake Geneva*, No. 08-CV-693, 2009 WL 3347101, at *1 (E.D. Wis. Oct. 15, 2009)). "As this language suggests, the non-moving party may be required to submit to a forensic exam even if that party has not intentionally withheld discoverable ESI: in particular, a third-party investigation may be appropriate when the non-moving party 'fails to initiate a reasonable process to search for, collect and produce responsive ESI.'" *Id.* (citing *Procaps S.A. v. Patheon, Inc.*, No. 12-24356, 2014 WL 11498061, at *3 (S.D.

Fla. Dec. 30, 2014)). Courts may infer from deficient or piecemeal ESI productions that a party lacks the necessary expertise. *See Id.* at *3. Courts must also consider the non-movant's privacy interests and ensure that a request for a forensic search is proportional to the needs of the case. *Id.* However, a protective order and an appropriate search protocol may mitigate privacy concerns. *Id.* at *3-4.

Defendant has shown that a forensic search, with appropriate search protocols, is warranted. A spreadsheet of unclear origins, containing redactions based on undisclosed search terms and removing all context from text conversations, is not a substitute for production of actual text conversations. Defendant is entitled to production of text conversations pertaining to Plaintiff's claims, damages, and employment with Defendant—not just isolated text messages containing search terms that are devoid of context.

Defendant argues that Plaintiff has been "caught (repeatedly) with messages that she has not turned over[.]" [Filing No. 64, at ECF p. 3.] Her initial production consisted of only a small fraction of the text messages later deemed to be responsive following repeated demands for supplementation. The June 15 supplemental production omitted some text conversations disclosed by Plaintiff in her interrogatory answers and deposition testimony. Furthermore, Defendant identified specific instances of improper redactions in Plaintiff's spreadsheet analysis of text messages. Plaintiff argues that the unofficial "draft" version of the spreadsheet is an adequate substitute for producing actual text conversations, despite the lack of any insight into the methodology used to identify responsive texts within this voluminous data dump.

While this production history is concerning for intentional concealment, the Court need not make that finding to determine that forensic imaging is warranted. Rather, forensic imaging is appropriate because Plaintiff's incomplete and disorganized production of text message

evidence shows that she lacks the expertise necessary to search and retrieve all responsive data. *See Belcastro*, 2019 WL 7049914, at *3 (granting a motion to compel a third-party forensic exam where a party's own ESI search failed to recover texts that he claimed existed and where the party did not identify the search terms used to conduct his own ESI retrieval). The protective order currently in place [Filing No. 34] and an appropriate protocol limiting the scope of the search can mitigate the infringement on Plaintiff's privacy interests. Additionally, given the significant damages alleged [Filing No. 37, at ECF p. 5], such a search would be proportional to the needs of the case.

Plaintiff argues that Defendant's motion is untimely and non-compliant with S.D. Ind. Local Rule 37-1. Defendant filed the motion to compel forensic imaging ten days before the liability discovery deadline. While Defendant could have filed the motion sooner, the facts here are different and the delay was not as egregious as in the cases cited by Plaintiff. *See Alight Solutions v. Thomson*, No. 20 C 3043, 2021 WL 5119111, at *3 (N.D. Ill. Nov. 3, 2021) (denying a motion to compel a forensic search of multiple personal and family devices that was filed "a mere hour or two before the close of discovery" and that presented arguments based on "mischaracterizations" and "exaggerations"); *Hespe v. City of Chicago*, No. 13 C 7998, 2016 WL 7240754, at *5-7 (N.D. Ill. Dec. 15, 2016) (finding no error in the magistrate judge's denial of a motion to compel a forensic search of a phone, filed on "the eve of the close of discovery," where the movant failed to show that prior productions of text messages were incomplete).

As to compliance with S.D. Ind. Local Rule 37-1, the parties have had multiple discussions regarding the production of text messages, and Plaintiff acknowledges that Defendant raised the issue of forensic imaging in an April 2, 2026, letter. [Filing No. 62, at ECF p. 16.] Defendant requested the June 15 discovery conference, in part, for the purpose of

discussing Plaintiff's failure to produce all responsive text messages. The pre-conference submissions of both parties discussed the production of text messages. The June 15 conference was largely a waste of time due to Plaintiff's late supplemental production, but the Court did not require Defendant to request a second discovery conference on the same issue. [Filing No. 54, at ECF p. 2.] Rather, the Court explicitly granted the parties leave to file a motion seeking appropriate relief if they were unable to resolve the dispute after further discussion. [Filing No. 44.] Thus, Plaintiff's arguments related to non-compliance with S.D. Ind. Local Rule 37-1 fail.

Additionally, both parties have requested fees and expenses associated with Defendant's motion. A party who prevails on a motion to compel is not entitled to fees if the opposing party's position was substantially justified or an award of expenses would be unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii). Given the privacy implications, Plaintiff's concerns about a forensic examination of her cell phone are understandable. However, the Court previously admonished Plaintiff for her discovery failings and dilatory approach to discovery. [Filing No. 54, at ECF p. 1-2.] If the forensic imaging reveals intentional concealment or other significant discovery violations, then the Court would entertain a motion for fees and expenses associated with the motion to compel, as well as a request for reimbursement of the cost of the forensic imaging. For now, any forensic testing shall be at Defendant's expense. Plaintiff's request for fees is denied with prejudice, and Defendant's request for fees and expenses is denied without prejudice.

## IV. Conclusion

Accordingly, the Court grants Defendant's motion to compel forensic imaging. [Filing No. 57.] The parties shall cooperate in good faith to establish an agreed protocol for a forensic examination of Plaintiff's cell phone that limits the search to text conversations during a defined period, pertaining to Plaintiff's claims, damages, and employment with Defendant. Within 14

days of this order, the parties shall file their agreed protocol. If the parties are unable to agree to a protocol, then they shall separately file their proposed protocols, and the Court will implement a protocol it deems appropriate. Plaintiff's surreply [Filing No. 68] is stricken.

Date: 10/27/2026

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email